The next case for argument is Johnson v. Rankins. It is DACA 23-5095. Counsel, please proceed when you're ready. Thank you. May it please the Court. Good morning. I'm Tessa Henry from the Attorney General's Office of Oklahoma. And with me is Co-Counsel Aspen Lehman. And we represent the appellant respondent, William Rankins. In this case, there is one thing that all parties agree on. And that is that a Batson reconstruction hearing is absolutely feasible with respect to Batson's second step. Indeed, the District Court, in its opinion and order, noted, arguably, it would not be impossible or unsatisfactory to reconstruct that portion of a Batson reconstruction hearing that pertains to step two. And indeed, Johnson admits the same in his brief to this court and even goes on to make what appear to be step three arguments as to Batson. And that's what this court specifically directed the District Court to decide, was whether or not a reconstruction hearing was feasible as to step two of Batson. But instead, the District Court improperly focused on ways in which or problems that might arise as to Batson's third step. And this was an abusive discretion. Importantly, in this case, Rankins provided the District Court with everything that it needed to reconstruct Batson's second step. Rankins provided the prosecutor's contemporaneous notes from Vladimir, as well as jury charts filled out by both prosecutors, depositions from all relevant parties, including both trial prosecutors, the trial judge and trial defense counsel, race and ethnicity information for every single member of this prospective jury pool, as well as the voir dire transcripts themselves. And all of this evidence formed a great deal of direct and circumstantial evidence of the prosecutor's states of mind in this case. As far as direct evidence, we have the lead prosecutor in this case, Mr. Tim Harris, providing race neutral reasons as to every single prospective juror at issue in this case that this court discussed in its previous decision. With respect to circumstantial... Well, there's no way that the court could consider or even contemplate the reasons that were given for, well, facial expressions or a tone of voice or something that was implied in something someone said to the prosecutor. Yes. Do those, do those implicate step two or is that really a step three question? That is step three. Step two, according to the Supreme Court in Perkett v. Allem, is really just the prosecutor provides facially valid race neutral reasons. Of course, step two, as considering in that case, was assuming it was going to be spontaneous and contemporaneous. And with Batson hearing, we don't have that contemporaneous element. So do we treat it differently? Sort of new territory is what I'm saying. Yes, that is true. It is a unique circumstance and certainly the first time this circuit has really dealt with it. But in my opinion, step two remains the same, whether it is at trial or years after the fact. Yes, it is the prosecutor providing the facially valid racial reasons. It's at step three where you get to the credibility determination and any arguments as far as pretext. So step three would have been where the district court would have judged the credibility of the prosecutors. Presumably step three, even with the contemporaneous objection, which we didn't have here, the district court would still have had, might not have seen the facial expression or might not have seen or heard perhaps the tone of voice. It should have heard the tone of voice. Absolutely. I suppose they are doing some of that judging of the prosecutor's credibility, regardless of when the hearing is ultimately heard. Absolutely. And in Hernandez v. New York, the Supreme Court made clear that the most important thing about the Batson inquiry is actually the demeanor of the prosecutor providing the race mutual reasons. And so it is a big credibility question for the trial court to answer. And in Thaler v. Haynes, the Supreme Court also decided that just because a trial judge doesn't necessarily witness a facial expression or an arm crossing or something of that nature doesn't mean that the trial judge has to reject that race mutual reason. Again, it is just about judging that credibility. Would the district court have been OK had it taken a different approach here and said, all right, step two, it looks like we could have a hearing on step two, but I can already tell you that I will not find the prosecutor credible. And I can't I just can't go there because I can't judge 10 years later whether he's telling the truth about a facial expression or tone of voice. And I find that or I just simply am going to find that incredible. Could that have happened or would this judge have had to have the hearing first? In my opinion, according to this court's previous decision in this case, the feasibility question is just with respect to step two. This court in its previous decision seemed concerned about the passage of time and whether or not there would be any memory left on the part of the prosecutors. So that, in my opinion, is where the feasibility question stands. So if the district court found that step two was feasible, as it did in this case, then it should have held a reconstruction hearing, because it's really impossible for the district court to know without seeing and hearing the testimony in person of the prosecutors and defense counsel and the trial judge. It's really impossible for the district court to make the kind of determination that it did in this case and kind of assume a credibility determination. It's not unusual for demeanor to be an important consideration during voir dire. Yes. In fact, show me a voir dire where it hasn't been. And so is the district court rule here essentially a per se rule? That I'm just not going to ever have a reconstruction hearing because prosecutors are going to come in here and tell me he didn't like someone's demeanor and I don't have a time machine so I can't tell. Is that what's going on? And if so, is that abuse of discretion or is that an error of law? It's a factual and a legal error in this case. And I do think it is a situation where the district court is saying, if there are demeanor-based reasons, then I'm not going to hold a hearing. That seemed to be what happened in this case. The district court was not there for voir dire in December 2012. And so the district court did not feel comfortable holding a reconstruction hearing. And that was absolutely error. And I want to point this court very quickly to the case of Brown v. Kelly from the Second Circuit. And in that case, the prosecutor provided, I think it was about six years after voir dire, the prosecutor provided race-neutral reasons as to four prospective jurors. And those were mainly demeanor-based. The prosecutor explained that one juror was timid and nervous. Another juror was acting hostile in his demeanor and tone. And the habeas court in that case still held a hearing and still was able to make credibility determinations with respect to those race-neutral reasons. And on appeal, the Second Circuit emphasized that the district court in that case, regardless of whether or not there were demeanor-based reasons, was not foreclosed from making the necessary determination as to the prosecutor's state of mind. So this absolutely could have happened in this case. A reconstruction hearing could have happened. And I think it's important to note, too, that Mr. Harris provided non-demeanor-based race-neutral reasons as to the two prospective jurors at issue, Twill and Martinez. Twill, Mr. Harris explained, was a medical doctor. And Mr. Harris and Mr. Drummond, in their general voir dire tactics, tended to avoid persons with higher degrees because there was a chance that they would be too critical or too exacting. Prospective juror Twill also knew someone else on the prospective jury panel, Dr. Victoria Wilson. And Mr. Harris, again, was concerned about jurors knowing each other because when it came time for deliberations, there was a threat of outside influence. And it also appeared that there was maybe some tension between these two prospective jurors. And then we finally have the demeanor-based reason, which was some maybe facial expressions or tone during Twill's interaction with defense counsel Mark Lyons that kind of raised a red flag to Mr. Harris. So we have several reasons here before we even get to demeanor that the district court could have considered. And the same with Martinez. When this goes, let's say this goes back. I'm still struggling to understand what this particular district judge who's concerned about judging demeanor of the prosecutor as to demeanor ten years ago of the jurors, prospective jurors. If this judge says, yeah, I find you can't be, basically you're not credible as to any of these statements you're making about demeanor. And however, yeah, you are credible because these other statements are verified by the record, essentially, these other reasons. If that district judge then says, but because you're relying on demeanor-based reasons nine years later, basically I can't find that credible, the whole entire reason. This is kind of getting to be a long story. My point is, how do you separate those? How do we ask the district court if we remand this, which is what you're asking us to do, how does the district court resolve the problem that it has with judging the prosecutor's demeanor? So that would, again, be a step three determination. And something that we have here, some things that we could probe and explore in a reconstruction hearing is having Judge Tom Gillert, the trial judge from this case, testify. Because he was present, he was in the room, and he could perhaps testify as to if he recalled any of these prospective jurors' demeanor. The same for Mr. Mark Lyons. He could be asked about that. Are there other ways to explore this to determine that credibility, in addition to watching Mr. Harris testify at a reconstruction hearing? And if this court doesn't have any further questions, I want to move to yours. I actually have a question. Of course. I am wondering, then, what you think about the argument, I think, that your opposing counsel will make that we just can't do reconstruction hearings. U.S. Supreme Court has never said they're OK. I know they're going on. I guess the argument goes. But given the problems of reconstructing something 10 years later, how can that be constitutional? I'm making the argument. I'm asking you to respond to it. Yes. Well, I respectfully disagree that they have not been approved by the Supreme Court, because they have been in Batson itself, and then in Johnson v. California. Where in Batson did they say you can reconstruct 10 years later? Well, not specifically 10 years later, but the Supreme Court did remand Batson for further fact-finding. And the same in Johnson v. California. They remanded for steps two and three of the Batson inquiry. And many circuits hold reconstruction hearings, the Second Circuit especially, the Third Circuit, the Ninth Circuit. And, again, it's a question of credibility. When we have jury trials, the jurors weren't present for the crime that these witnesses are testifying to. But they can judge the credibility of these witnesses and make these fact findings. So I think that Batson reconstruction hearings can absolutely happen. And it's why this court, in crafting a remedy in this case, decided to attempt a reconstruction hearing. Thank you. I'd like to reserve the rest of my time. May it please the Court. James Hankins, appearing for Appellee Alonzo Johnson. It's not often I sit at the appellee table. So I have newfound appreciation for the standard of review here. And in our view, that might be determinative of this case. Because this is not a substitution of your judgment for the district court. This is an evaluation of the judgment of the district court as arbitrary, capricious, totally based on things not in the record. It's a heavy load for, I think, the state to pull here. Why is it? Every day, district courts evaluate credibility of witnesses. And they weren't there. They didn't see this. They didn't see that. But they look at the witnesses. They consider all of the facts. And here, there is a rich record as far as notes, as far as statements during trial, as far as the state judge's statements during trial. Normally, you get a much better case than this one, to have a Batson hearing. Now, it's the district court's call. Nobody here is saying, and we're going to reverse you if you go this way or that way. The district court looks at all of those people. Here's what they have to say, considers the facts, considers anything that is proposed, and then decides. Here's what I find. I find that you're not credible, or you're credible. It just looks like a punt. Why is this not a punt? By the district court? Exactly. Well, the district court, by my count, gave five reasons for that in its written order. And I think in the briefing, the state kind of limits it to two reasons concerning Dr. Twill and Ms. Martinez as the jurors, the tone or the demeanor-based attitude of those two jurors. But there's three other criteria here. It's the length of time over a decade. And there's two other that are very important. And I think they stem mainly from the testimony of the defense lawyer, Mr. Lyons. And that is, we look to the demeanor of the jurors, but we also have to look to the demeanor of the prosecutors themselves at the time that they are making the strike. And the second one, which may be the most important, is the atmosphere of the trial. Because Mr. Lyons said, and I probably didn't emphasize this in the brief the way I should have, but there's a gallery back there. There's people, there are citizens of the county who are watching this. And that's what Mr. Lyons said. He says, you know, I could see it and everyone in the gallery could see it. That's why he made the bats an objection. And I think the district court stylistically used extensive footnotes. But the district court noted that in footnote 14 of the opinion. And it's like, how am I supposed to reconstruct the, by all accounts, even Judge Gillert admitted this, the racially charged atmosphere of this? Why can't you put on all of that evidence of the racially charged atmosphere, which might implicate the prosecutor's motives here. The prosecutor himself was threatened with murder, allegedly, by Mr. Johnson. Why can't you put all that on? Why wouldn't that be relevant in a Batson hearing? Has anyone suggested you can't? Well, the district court did not indicate that we could not put it on. The district court said it could not be reconstructed in a viable way. You're talking about the demeanor of the prosecutor. That's the only reasons that, or the demeanor of the various witnesses the prosecutor was testifying to. I didn't see anything in the district court's order suggesting that if we were to remand for a Batson hearing, that you would not be able to present whatever evidence that you believe was relevant to the prosecutor's motive. I could probably present the evidence. And on the same side, the prosecution is also saying, the reason that we remember this is because this was such a public trial. It was such an important trial. There were three defendants. They are also suggesting that their memory is essentially been refurbished by the fact that this is such an important case. I think both sides will have that kind of information. Well, I think that just illustrates the point. It also provides a powerful motive for this prosecutor to put the guy who he thought was going to murder him in prison. Right, I mean, but why can't you present that evidence at a Batson hearing? I don't think anyone has suggested you can't. You did discovery on it. We could present the evidence. The district court ruled, okay, even if you did, how am I going to evaluate that? I understand. I'm just, you're talking about that sort of evidence, and I'm trying to verify that there doesn't seem to be anything preventing that from coming in at an actual Batson hearing. It's just that the district court cut that off by ruling that he couldn't judge the demeanor of these witnesses, and so he couldn't recreate, essentially. As to the racially charged atmosphere, I'm not sure what evidence there is. That is a mood. We have a mood here. I thought that you had the prosecutor testify, or did you have him testify in the… The defense lawyer mentioned that. I thought the prosecutor, but the defense lawyer testified. Yeah, Mr. Lyons. I thought, and why wouldn't you have that testimony there? Why wouldn't we call him at a reconstruction hearing if it's remanded? Right, right. We certainly could. Right. And the other side? But he's, I'm not sure what he's going to add. That's not already in the deposition, I guess what I'm saying. And, you know, I think we all understand what a racially charged atmosphere is, but it's more of a mood and a feeling. I'm not sure how a federal district judge evaluates that in terms of this Batson claim. This is a great argument for the district court at a reconstruction hearing. Now, what we set it back with is, is it impossible or unsatisfactory to hold the hearing? You can think it would be impossible if the prosecutor were deceased. The state judge climbing the Himalayas and something. There's nothing impossible. In fact, the table is set, in this case, about as good as a table can be set for a reconstruction hearing. And if this one's not good enough, then what is good enough? And why do we even bother sending any back then? Well, that's a good question. And in our view, these reconstruction hearings are completely illegitimate judicial proceedings. And you argued that, and we, in your re-hearing, we denied your re-hearing, petitioned for cert to the Supreme Court. Law of the case here. Law of the case is we sent it back for a reconstruction hearing with directions. That's the law of the case. And yet in your brief, you want to talk about Batson hearings and that you don't agree with them and you think the state waived them, but that's been there, done that. Why would we go there again in this case? Because the court has not considered those. You filed a motion for reconsideration. We denied it. That's not a merits determination, Your Honor. Well, in this case, it's the law of the case that we sent it back for a Batson hearing. We listed all the various support for Batson hearings. We sent it back. We denied your motion for re-hearing. You had an opportunity to make that argument to the U.S. Supreme Court. You did in a petition for cert. We've been there and done that is my point. I disagree, Your Honor. When you send it back to the district court, I'm an advocate for Mr. Johnson, and those are issues that I think are determinative, and I raised them. That's all I can do. So you think this panel can override the prior panel who said we are remanding for a Batson hearing and this is what you need to do once it's remanded. There is a specific direction as to what you need to do. The district court followed it, and now you're suggesting, okay, we can reverse all that and say never mind, we don't think that Batson hearings are an option. I considered how to bring these issues to the fore. Consider a cross appeal. My research indicated as the prevailing party, Mr. Johnson got the relief he asked for. So he's not really entitled to a cross appeal. And then there's a 2014 U.S. Supreme Court case, Jennings v. Stevens, which is basically on point here saying that a certificate of appealability on those issues or a cross appeal are not necessary. The petitioner can raise issues that were denied. So I would just cite the court to Jennings v. Stevens, 2014. It's a 63 opinion authored by Justice Scalia. So when I was responding to the, well, number one, I didn't cross appeal for that reason. And number two, when I'm responding to the brief of the appellant, I think I was obligated to raise those issues. Are there any other specific questions? My question, which was what more do you want? The only thing I can see here that another case might have is in the note, it might have said, I noted the demeanor, and it doesn't say that here, which in a way almost cuts the other way because they could have written that later if they were of that kind of ilk. So that's the entire point, Judge. Almost all of these considerations cut one way or cut another. That's what the district court had to decide. And the district court decided it in a way that is adverse to the appellant's case. In our view, that's correct. It's irrelevant whether it's correct or not. It was not an abuse of discretion. The district court can find that prosecutor not to be credible. If you have a hearing on remand, the district court can find the prosecutor not to be credible. And then it's left as to the demeanor issues. And then it's left with deciding does that conclusion, if it makes it, that the prosecutor has provided, which are justifiable on the record. And it's up to the district court what it thinks about the prosecutor's overall credibility. I guess I'm struggling with why the district court can't judge that. Well, clearly the district court can. The district court concluded that it would be unsatisfactory or impossible for it to do so. Was that conclusion? I think the court, I read the district court simply conclude that anytime there are demeanor, reliance on demeanor evidence, that it simply can't have a satisfactory hearing. It was more of a black and white line. I disagree, Judge. I do not read it that way. The district court opinion is very thorough, cites bats and understood the law. And Judge Phillips is correct. We do kind of have this thing teed up pretty well as far as facts go, as far as the testimony and the depositions. And I think the district court is looking at that and saying, okay. And in fact, I think even said, okay, even if I agree with what Mr. Harris is saying, on what basis do I evaluate it? In a federal courtroom, 11 years after trial? In our view, that's why it's legitimate. The state files a prodigious table of contents here with a lot of unpublished opinions. I'd like to read one where there's a reconstruction hearing where a prosecutor shows up and say, yeah, the accused was an African-American. I struck all the African-Americans because I thought they would be more sympathetic to him and less sympathetic to my professional law enforcement witnesses. Where's that case? Has that ever happened? Would that ever happen? No. And that's why we think this entire process is illegitimate. The prosecutor gets to go to the storage unit, get an 11-year-old trial transcript, and say, oh, yes, Dr. Terwill, yes, facial expressions. I remember it well. How is a federal court supposed to credit that? And maybe that's the point. Maybe the judge doesn't credit that is what I'm saying. And that's step three, and that's what we're asking the judge to do. I'll leave the court with this. The real reasons, and this is in the brief, the real reasons for the strikes are known only to Harris and Drummond because they conferred. This is their testimony at the deposition. They conferred with each other. They made no notes about it. They made no record about it. They had an in-person conversation, and then Mr. Harris made the strikes. So no one knows. And now they're coming back 11 years later saying these are the reasons. It's not legitimate. I'm out of time. Thank you. In his argument today and in his brief, Counselor Johnson makes many arguments with respect to Vatson's step three. And that exactly proves the point here. There needs to be a reconstruction hearing where a district judge can listen to the testimony of these witnesses and make credibility determinations as to Vatson's step three. And another thing I want to point out really quickly is that these hearings happen all the time in habeas cases. And as this court is aware, it takes a while for habeas cases to get to the federal courts because of exhaustion under 2254 and everything like that. So there is naturally a passage of time in those cases. And in Cleveland v. Brown from the Central District of California, we have a gap of 27 years. Yet there was still a successful reconstruction hearing where the habeas court was able to judge the credibility of the prosecutor. And so a reconstruction hearing should absolutely be held in this case. So I would respectfully request that this court reverse the district court's grant of conditional habeas relief and remand for a reconstruction hearing. Thank you. Thank you, Counsel, for your helpful arguments. Well argued both sides. The case is submitted and you are excused. This concludes our business for today. We will stand in recess until 9 o'clock tomorrow morning.